MANUFACTURERS' NATIONAL BANK OF TROY v. COX.

*Partnership — duties of partners to each other — individual transactions of partner.*

A firm agreed to pay B., the owner of a patented invention upon stoves, a specified royalty for the exclusive use of such invention and right to manufacture and sell stoves containing it, within a certain district. After the agreement was made, C., a member of the firm, without the knowledge of his partners, agreed to use his influence to introduce the invention to the trade generally, outside of the said district, for fifty per cent of the amount of royalty received, including that to be paid by the firm. C. afterward received fifty per cent of the amount paid by the firm, but it did not appear that C. used any influence to introduce the invention, or that the firm lost any profit or were in any way injured in business by the agreement. *Held,* that the arrangement by C. was one that conflicted with the interests of the firm, was a violation of his duty as a partner, and the firm were entitled to the profits made by him thereunder.

A settlement of the firm business between C. and his partners, after one of them suspected the arrangement, *held,* not to preclude the right of the other partners to maintain an action against C. for the amount received by him.

APPEAL by The Manufacturers' National Bank of Troy and others, from a judgment entered upon the report of a referee, upon a disputed claim against the estate of David B. Cox, deceased, of which the respondent, Mary E. Cox, was administratrix. The case was referred, under the statute.

The appellants are the assignees of the claim. from the surviving partners. The firm consisted of the deceased and Harvey Church, and Henry S. Church, and were engaged in the manufacture and the sale of stoves at the city of Troy, to a large extent. Under the arrangement made by the intestate with one Brown, they paid one dollar for the use of the invention for each stove manufactured from 1867 to 1870, inclusive, to the amount of $11,784. The intestate died September 23, 1872.

The referee found in favor of the defendant, and judgment having been entered, the plaintiff appealed. Such other facts as are material appear in the opinion.

*Irving Browne,* for appellant.

*R. A. Parmenter,* for respondent.

MILLER, P. J.   The claim of the plaintiffs is founded upon an alleged failure of the defendant's intestate to pay over and account for certain moneys received by him, which, it is insisted, belonged to the copartnership of which the deceased was a member.

The moneys were received by the intestate from one Brown, who had made an arrangement with the firm by which they were to have the exclusive use of an invention of Brown, which obviated certain difficulties in the manufacture of stoves.

The firm, by this arrangement, had the use of the invention to themselves in Troy and its vicinity, and were authorized to sell the right to its use to stove manufacturers having their head-quarters in Troy by paying Brown $1 royalty upon each stove manufactured. The arrangement was made by the intestate on behalf of the firm, and at the same interview at a later period of the conversation and after the contract had been agreed upon, a further agreement was made between the intestate and Brown, by which, in consideration that the intestate should use his influence for Brown to introduce the invention to the stove trade generally outside of the district over which the firm had control, he was to receive fifty per cent of

the net proceeds for the use of said improvement and patent, including the royalties to be paid by the said firm. The copartnership afterward paid large sums of money under the agreement first entered into, one-half of which was paid over by Brown to the intestate. The firm had no knowledge of the last arrangement at the time it was made, nor until after they had ceased to pay royalties at the end of 1870, but Harvey Church, one of its members, had some suspicion of it, but he did not know of it on the 4th of March, 1871, when the copartnership affairs were settled finally without any notice being taken of the claim now made.

There was no evidence that the intestate used his influence for Brown, or rendered him any service whatever under the agreement made with him.

The question arises upon the facts presented in this case whether a partner can enter into a secret arrangement with a third person by means of which he might be enabled to reap an advantage or profit arising out of the transactions of such persons with the firm.

It is contended by the plaintiff's counsel that the secret agreement between the intestate and Brown was hostile to the interests of the copartnership, and that the intestate could not lawfully enter into any arrangement for his own private advantage which would operate in any such manner. By the copartnership agreement the intestate had a right to enter into any business outside of the firm which did not interfere with the business of the firm, and as the evidence stands it is not manifest that this arrangement in any way interfered with or affected the interests of the copartnership.

It does not appear that they lost any profit or failed to realize all which they otherwise might have done. If it be true, as the evidence shows, that the agreement with the intestate for his own individual benefit was made after the arrangement had been completed as to the amount to be paid for the use of the improvement invented by Brown, then the copartnership paid no more than they otherwise would have done. Nor were they in any way injured by the provision made for the introduction of the patent outside of the district over which the firm had control, as no sales were made except to the copartnership. Although it appears that no actual injury resulted to the firm, yet I think the arrangement entered into between the intestate and Brown, if it had been carried into effect, may well have tended to deprive the partnership of profits which otherwise might have been realized.

The success of the business depended upon the extent of territory over which it might be carried and would not be confined to the immediate locality where the firm was, and the business conducted. Hence the effect of introducing this invention generally outside of the Troy district might be to restrict the sales of the copartnership's stoves and to confer advantages on other manufacturers of the same article. It might have a tendency to drive them out of the market to some extent and thus operate injuriously to the business of the firm.

If such was the fact, then it remains to be considered whether there was not a violation of the obligations due from one partner to his associates which made the intestate liable for the profits to his copartners. The principles upon which the relationship of copartners is founded are strict and exacting, demanding entire good faith toward each other and the highest standard of morality, integrity and fair dealing. They occupy a position of trust and confidence far above the ordinary standard of trade morality, in their dealings with each other. They are both trustees and agents and have no right to deprive the partnership of the benefit of any portion of their capital, diligence, skill and industry by engaging in any other kind of business. Story on Part., §§ 1, 77; Collyer on Part., § 184; Parsons on Part. 227.

These principles are familiar and well settled. But above all they are not allowed to engage in any other business which gives them an interest adverse to that of the firm. *Glassington* v. *Theoaites*, 1 S. & S. 133. Nor can one of them make a profit privately by dealing with himself or clandestinely carry on another trade or business which may prove injurious to the interests of the copartnership. Story on Part., § 178; Parsons on Part. 224, 227, 228; *Burton* v. *Wookey*, 6 Madd. 367; Collyer on Part. 186; *Bentley* v. *Craven*, 18 Beav. 75; *Struthers* v. *Pearce*, 51 N. Y. 361.

It cannot be doubted, I think, that the intestate, by his secret arrangement with Brown, by which he was to reap an advantage, was engaged in a business which necessarily conflicted with the interests which he held in common with his associates, and which, if the agreement had been fulfilled, might have seriously affected their profits, and although he did no act which produced any such results, as he had violated his obligation and duty, the business upon which he had thus entered became a part and parcel of the business of the firm, and that he was liable to account to his

copartners for their proportionate share of the profit he realized. It is sufficient, I think, that he violated the principles which should have controlled his action thus to render him liable even although the proof fails to show any direct loss to the firm by means thereof.

The settlement of the affairs of the partnership for a portion of the royalties due to Brown does not, I think, preclude the right to maintain the plaintiff's case, even although one of the partners entertained a suspicion in regard to the agreement between Brown and the intestate.

The objection that the action should have been in equity is not, I think, well taken. Nor does it appear to have been made upon the trial.

For the reason stated I am of the opinion that the referee erred. The judgment should be reversed and a new trial granted, with costs to abide the event.

*Judgment reversed and new trial granted.*